IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JACKIE GOMEZ, | No. 2:20-CV-0020-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| YEHUDA FERRIS, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is plaintiff's complaint (ECF No. 1).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff names four defendants: (1) Yehuda Ferris, (2) Wayne West, (3) K. Peterson, and (4) Laura Eldridge.  Plaintiff alleges that defendants refused to provide him with a kosher diet in accordance with his religious beliefs, violating his First Amendment rights.

Plaintiff, a prisoner at California Health Care Facility in Stockton, California, applied to join the kosher diet program.  On May 21, 2019, defendant Ferris, a rabbi, briefly interviewed plaintiff regarding his eligibility for the kosher diet program.  Plaintiff states the interview lasted no longer than five minutes, and he believes defendant Ferris treated him in an unreasonably cynical manner.  Instead of approving plaintiff, defendant Ferris referred his application to the religious review committee for determination.

On July 2, 2019, defendant Peterson, the chairperson of the religious review committee, conducted a private meeting where he decided to deny plaintiff's application.  Plaintiff was excluded from attending the meeting and learned of defendant Peterson's decision by correspondence he received on July 15, 2019.  Plaintiff states that the reasons given in the July 15 letter for denying plaintiff's application were vague and he subsequently filed an appeal.

On August 6, 2019, defendant West interviewed plaintiff regarding his rejected application.  Plaintiff told defendant West that he was previously part of the kosher diet program and that he did not understand why defendant Ferris had not approved his application.  Plaintiff claims that defendant West also behaved unfairly towards him by giving plaintiff vague reasons as to why his application was denied.

///

///

2

Finally, plaintiff claims that defendant Eldridge improperly rejected plaintiff's second level appeal by ignoring documents from 2009 and 2010, which demonstrate that plaintiff was part of a kosher diet program.

## II.  DISCUSSION

It is unclear from the complaint which specific claims plaintiff raises against each individual defendant.  Plaintiff appears to allege that all defendants denied him the opportunity to abide by his faith's diet, violating plaintiff's First Amendment rights.  However, his factual allegations focus on the potential mishandling of his kosher-diet application rather than an outright deprivation of a religious liberty.

### A.     **Free Exercise of Religion**

Plaintiff's complaint fails to establish a cognizable free exercise claim under the First Amendment or applicable federal statutes.

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.  See id.  Prisoners also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives.  See McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish

3

prisoners with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting prisoners to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim prisoners' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prisoners).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 "in response to the constitutional flaws with RFRA identified in City of Boerne."  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'"  Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S. Ct. 2113, 2117 (2005)).  Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context).  To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct "burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987).  The burden must be more than a mere inconvenience.  See id. at 851.  In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith.  See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the prisoner shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest.  See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89).  In applying this test, the court must weigh four factors:  (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other prisoners, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction.  See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

///

///

Under RLUIPA, the government is required to "meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S. Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Contrary to plaintiff's claim, prison officials provide kosher meals, but the meals are based upon approval of eligibility. The initial interview by a rabbi aligns with the rule that a prisoner is constitutionally protected in exercising a religious mandate when the prisoner's belief is both sincerely held and rooted in religious faith. See Shakur, 514 F.3d at 884-85. Here, the Third-Level Appeal Decision, attached to plaintiff's complaint[1], reflects the following: "According to Rabbi Ferris and the RRC, the appellant did not meet the criteria for inclusion into the Jewish Kosher Diet Program as his answers about Judaism did not convince the committee that the appellant was knowledgeable enough or did not meet the requirements for inclusion into the kosher diet program." ECF No. 1 at 9-10. Furthermore, plaintiff was able to reapply to the kosher diet program in January 2020 after further consultation with the rabbi. See id. Here, the facts alleged show that plaintiff was denied a kosher diet because he was not eligible for the program. As such, plaintiff's allegations fail to meet either of the standards outlined above to establish a constitutional or statutory violation with respect to denial of a kosher diet.

///

///

---

[1] At the pleading stage, the Court generally may not consider materials outside the complaint. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions. See id. at 454.

**B.     Prisoner Grievances**

Despite plaintiff's disagreement with defendants' rejection of his application throughout the appeals process, prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling prisoners to a specific grievance process).

Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

If plaintiff's claims stem solely from the appeals process' failure to grant him acceptance into the kosher-diet program, then he fails to state a claim under § 1983. Plaintiff complains that he received vague justification for denying his application, and that suggests defendants rejected his application arbitrarily. However, the facts alleged in plaintiff's own complaint show that plaintiff's application was denied based on the expertise of a rabbi. ECF 1 at 9-10.

///

///

7

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at

///
///
///
///
///
///
///
///
///

1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend; and
2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated:  June 18, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE